92

## 25574. MORTGAGE PURCHASE AND SALES COMPANY v. WILLIAMSON.

JENKINS, P. J. "An agreement by a creditor to receive less than the amount of his debt can not be pleaded as an accord and satisfaction, unless it be actually executed by the payment of the money, or the giving of additional security, or the substitution of another debtor, or some other new consideration." Code, § 20-1204. "The accord and satisfaction must be of some advantage, legal or equitable to the creditor." § 20-1203. In the absence of a bona fide dispute, mere surrender by the debtor of money already paid or property already admittedly belonging to the creditor, where no advantage or benefit accrues to the creditor beyond that which exists under the original contract, will not constitute an accord and satisfaction. *Burgamy* v. *Holton*, 165 *Ga.* 384 (3) 395 (141 S. E. 42); *Red Cypress Lumber Co.* v. *Beall*, 5 *Ga. App.* 202 (2) (62 S. E. 1056); *Molyneaux* v. *Collier*, 13 *Ga.* 406 (11, 12); *Wilder* v. *Montgomery*, 51 *Ga. App.* 231 (2) (179 S. E. 861); *Bass Dry Goods Co.* v. *Roberts Coal Co.*, 4 *Ga. App.* 520 (61 S. E. 1134); *Riley* v. *London Guaranty & Accident Co.*, 27 *Ga. App.* 686 (1, c,d) (109 S. E. 676).; *Hart* v. *Little*, 39 *Ga. App.* 106 (4) (146 S. E. 338). But even a slight additional advantage or other new consideration to the creditor, such as a waiver of a defense by the debtor, or his agreement to surrender possession of the realty covered by a security deed before he is legally obliged to do so, in exchange for a promise by the creditor that the indebtedness shall thereby be discharged, where the undertaking of the debtor is fully performed and accepted, is a good accord and satisfaction. Although after a default the creditor under a security deed is entitled to maintain ejectment to obtain possession of the property from the debtor (*Bennett* v. *Green*, 156 *Ga.* 572, 579, 119 S. E. 620; *Livingston* v. *Hirsch*, 172 *Ga.* 854, 159 S. E. 253; *Carswell* v. *Hartridge*, 55 *Ga.* 412; *Biggers* v. *Byrd*, 55 *Ga.* 650; *Dykes* v. *McVay*, 67 *Ga.* 502), and although the instrument may expressly give to the creditor the right after a default to enter upon the premises and collect rents and profits, as well as the right to sell the property at public sale after legal advertisement, still the voluntary giving up of possession and of all claim and defense, without the constraint of any proceeding under the contract or under the statute, may afford the basis of a valid satisfaction of the debt, where the debtor's agreement has been executed. *Butts* v. *Maryland Casualty Co.*, 52 *Ga. App.* 838 (184 S. E. 774); 1 C. J. 551, § 70. In the instant action for a deficiency judgment against the debtor, her testimony, although disputed by testimony for the creditor, was sufficient to authorize the verdict in her favor on her defense of accord and satisfaction. The court did not err in refusing a new trial on the general grounds.

*Judgment affirmed. Stephens and Sutton, JJ. concur.*

DECIDED OCTOBER 28, 1936.

ADHERED TO ON REHEARING DECEMBER 18, 1936.

*John Matthews,* for plaintiff.

*Poole & Fraser,* for defendant.

ON REHEARING.

JENKINS, P. J.   It appears conclusively in this case that possession of the premises was in fact voluntarily surrendered, and that the plaintiff mortgagee thus received possession from the defendant before the time when the property, after advertisement, was sold under the power of sale in the security deed.   The evidence for the defendant is clear and unequivocal that it was agreed that upon such a voluntary surrender the remaining unpaid indebtedness would be extinguished.   The difficulty in the case—and it is the point stressed in the motion for rehearing—arises by virtue of a letter which was sent by the mortgagee to the defendant after the agreement testified to by her, and before the date of the surrender of the property.   All of the portions of this letter which are embodied in the record are as follows: "We have since inspected the property, and referred this matter to our attorney for foreclosure on the second mortgage.   He has also been instructed to secure a deficiency judgment against you for the difference between the sale price of the property and the amount of your indebtedness. * * * [Stars indicate the omission by the record of part of the letter.]   The property will be sold on the first Tuesday in July. We shall appreciate occupancy of it at your earliest convenience." The contention of movant is, that, no matter if the mortgagee had agreed to the extinguishment of the balance due on the note in consideration of the surrender of the property, it thus appears that before any such agreement was actually consummated the mortgagee evidenced by its letter a contrary intention, and consequently any subsequent surrender of the property, even though at the mortgagee's request, could not have been an accord and satisfaction of the debt.   Movant especially relies on *Wilder* v. *Montgomery,* cited in the original decision.   In that case, contrary to the facts in this case, it will be seen that no surrender of the property was ever actually made.   We recognize, however, the rule of law that a mere accepted proposal that upon the doing of a certain thing a debt is to be thereby satisfied does not become effective as an accord and satisfaction until the proposal is actually

complied with, and that if, before the satisfaction of the accord, the acceptance by the party to whom the proposal was made is withdrawn, a subsequent compliance by the other party with the original terms of his proposal will not ordinarily constitute an accord and satisfaction. Accordingly, we are free to say that this case is not without doubt and difficulty. Counsel for movant have ably and strongly presented their contention that the verdict is absolutely without evidence to support it, and that a contrary verdict was demanded. No criticism in the slightest degree is made by counsel for the defendant because of any omission from the record of any portion of the plaintiff's letter to the defendant as intended to work any unfair advantage to the plaintiff, and no such intimation is made by this opinion with respect to these attorneys of high standing. However, we are constrained to believe that our original judgment ought to be adhered to, for the reason that it does not clearly and unmistakably appear that the verdict in favor of the defendant was without evidence to support it, since it does not clearly and unmistakably appear from the portions of the letter which are embodied in the record, when taken and construed in connection with the other testimony, that the prior alleged but disputed agreement had been annuled and abrogated before the compliance therewith by the defendant. The defendant in her evidence referred to other statements contained in the letter from the mortgagee, which are not embodied in the portion of the letter set forth in the record. She testified that this letter from the mortgagee, dated June 16, 1933, the original of which she admitted receiving but did not preserve, referred to a previous letter from her, dated May 26, 1933, but she was "sure [she] didn't know what they referred to." This letter from her to the mortgagee was not introduced in evidence by the mortgagee.

The representative of the mortgagee testified that he had never told the defendant that if she surrendered the amount paid on the obligation, and surrendered possession of the property, the balance of the indebtedness would be canceled; that her only proposition along this line was in her letter of May 26 to the mortgagee; and that his "reply" to her letter *refused the offer.* It thus seems to appear that the refusal made by plaintiff's letter pertains only to the *offer contained in defendant's letter.* It does appear, however, from the testimony of this representative that he

did have a memorandum "that she would vacate on July 1st." It will thus be seen from the testimony embodied in the record that the alleged but disputed oral agreement, by which the defendant was to surrender the premises and obtain cancellation of the balance due on her debt, was made some time in the last of May, but before May 26; that on May 26 the defendant wrote to the plaintiff a letter dealing with the subject-matter of a surrender and cancellation, the terms of which letter, or whether or not it sought to modify the alleged but disputed previous understanding, not being disclosed, her letter not having been introduced in evidence; that on June 16 the plaintiff mortgagee wrote to the defendant a letter which was introduced in evidence, a portion of the terms of which is embodied in the record; that following the receipt of the letter of June 16, the defendant actually surrendered the premises, and the plaintiff received possession thereof during the latter part of June before the sale by the plaintiff, early in July, under its power of sale. If the defendant's letter of May 26 to the mortgagee were in evidence, it might perhaps resolve any doubt upon the disputed issue whether or not the alleged oral agreement of surrender and cancellation had or had not been made, as contended by the defendant. It might also throw light upon the meaning of the letter of June 16 from the mortgagee to the defendant; that is, whether it was merely intended to reject the offer contained in the defendant's letter of May 26, and was so limited in its effect, as seems indicated by the testimony of plaintiff's representative, or whether it meant a complete withdrawal of any *previous* accord as to surrender and cancellation. If the defendant's letter by its terms merely proposed *de novo* such a cancellation, there would be a strong implication that no such understanding already existed. If this letter by its terms sought to alter or modify the terms of the alleged previous understanding, it would be strongly corroborative upon the contention that such a previous agreement had in fact been made. While it is true that the mortgagee's letter of June 16, as it appears in the record, embodies statements which, standing alone and unexplained by other testimony, might be taken not only as amounting in effect to a rejection of the proposal made by the letter of the defendant, but also as inconsistent with any previous unreferred to agreement of surrender and cancellation, yet if such a

previous agreement had in fact been made, as sworn by the plaintiff, it is clear and plain that the letter does not refer to or purport to withdraw the plaintiff's previous alleged acceptance of the plaintiff's proposition, and might reasonably have been understood by the defendant and construed by the jury, in the light of the other testimony, to mean that the plaintiff rejected the proposed offer made by the defendant *in her letter of May 26,* with the result that the mortgage would be foreclosed, and a deficiency judgment obtained, unless the defendant promptly complied with the agreement already made as to the surrender of the property. The letter in fact closed by asking just this—a prompt surrender of the property. There is nothing unusual in the idea of obtaining compliance with a contract by announcing or threatening a suit. If, in view of the other testimony, this be a reasonable construction of the portion of the plaintiff's letter embodied in the record, it does not mean reading something into it in order to hold that a contrary finding was not absolutely demanded.                                   *Judgment adhered to.*